# Staunton.

## THE MOORE LIME CO. V. JOHNSTON'S ADMINISTRATOR.

### September 29, 1904.

1. APPEAL AND ERROR—*Variance.*—An objection for a variance between the allegations of a declaration and the proof cannot be made for the first time in the appellate court.

2. MASTER AND SERVANT—*Safe Appliances—Negligence.*—It is not negligence to fail to provide a "drip cock" for the throttle valve of a stationary steam engine which is provided with a cylinder cock, through which accumulated water can pass in safety from the throttle valve, and which, in point of fact, has served that purpose for many years.

3. MASTER AND SERVANT—*Youthful Employee—Negligence in Selection.*— It is not negligence to employ as engineer of a stationary steam engine a youth eighteen years of age, of more than average intelligence, who for more than a year prior to his employment as a regular engineer had been put in charge as supernumerary, and frequently ran the engine for days at a time, and who displayed special efficiency in operating machinery.

4. MASTER AND SERVANT—*Negligent Injury—Burden of Proof.*—The negligence of a master cannot be inferred from the mere occurrence of an accident by which his servant is injured. That fact alone does not raise even a *prima facie* presumption that the master has been guilty of negligence, or a breach of duty to his servant. Negligence of the master, in such case, is an affirmative fact to be established by the injured servant. If the injury may have resulted from one of two causes, for one of which the master is responsible, but not the other, the servant cannot recover; neither can he recover if it is just as probable that the injury was caused by the one as the other.

Error to a judgment of the Circuit Court of Botetourt coun-

ty, rendered in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Shelton & Moore* and *R. L. Parrish & Son,* for the plaintiff in error.

*Benjamin Haden,* for the defendant in error.

Whittle, J., delivered the opinion of the court.

The defendant in error's intestate, J. W. Johnston, engineer in charge of a stationary engine of the plaintiff in error, the Moore Lime Company, which operated the machinery in their stave factory at Eagle Rock, was killed on the morning of March 17, 1902, by the explosion of the throttle-valve of the engine. Thereupon this action was brought by the personal representative of Johnston against the Moore Lime Company to recover damages for the death of his intestate, alleged to have been caused by the negligence of the defendant.

Upon the trial of the case, a verdict and judgment were rendered in favor of the plaintiff, and to that judgment a writ of error was awarded by one of the judges of this court.

At the time of the accident Johnston was about eighteen years of age, and had been in the employment of the company for nine years, working about the engine and boiler and other machinery. He was a young man of more than average intelligence, and was considered especially efficient in operating machinery. For more than a year before he became the regular engineer, he was put in charge as supernumerary whenever the engineer was out of place, and frequently ran the

engine for days at a time.   He was made permanent engineer January 1, 1902, and filled that position continuously until his death.

The accident occurred on Monday morning at seven o'clock, and the engine had not been in operation since the close of the working day the previous Saturday.   Fairburn, the company's master mechanic, was in the boiler-room about 6:30 o'clock Monday morning, and, discovering that the water was too high in the boiler, called Johnston's attention to that fact, and also cautioned him to be careful about starting the engine.   The witness had seen Johnston start the engine too quickly at other times, and had warned him of the danger of it.   William King was in the boiler-room talking to Johnston immediately, before the accident.   He did not actually see him open the throttle-valve and turn on steam, but after Johnston pulled the whistle cord and blew the whistle, he turned and had only two steps to take to reach the throttle-valve; King at the same time started out of the boiler-room, and had hardly reached the outside when the explosion occurred.   The shock was so violent that the heavy cast-iron globe valve was shattered, the boiler-room door blown open and the room filled with steam, so that some moments elapsed before Johnston could be rescued, and he died a few hours later from the injuries received.

The declaration does not distinctly disclose upon what hypothesis the plaintiff seeks to fix liability upon the defendant; but as no objection was raised in the trial court for any variance between the allegations of the declaration and the evidence, that question cannot be raised in this court for the first time.   *Bertha Zinc Co.* v. *Martin's Admr.*, 93 Va. 801, 22 S. E. 869; *Richmond R. &c. Co.* v. *West*, 100 Va. 188, 40 S. E. 643.

The grounds of negligence chiefly relied on here are as follows:

1. It is insisted that the throttle-valve of the engine was not

provided with a "drip-cock," or "by-pass," as some of the witnesses call it, for the lack of which it is alleged that water accumulated in the pipe connecting the boiler with the engine and throttle-valve, from condensation, and could not escape. The presence of water, it is said, caused the explosion, either in one of two ways: The water, if not frozen, when steam pressure was turned upon it by opening the valve, caused a "water-hammer" in the valve and burst it; or, else, the water froze in the valve and cracked it, and when steam was turned in and entered the valve it produced the explosion.

These theories in regard to the necessity for the "drip-cock" are not sustained by the facts in the case. There was no "drip-cock" to the throttle-valve originally, and no provision made for its use, and the engine had been safely operated for years without that appliance. Indeed the "drip-cock" was first attached to the valve by Hammitt (who was employed by the defendant for one month as a machinist) in December, 1901, by drilling a hole through the globe valve and inserting the "drip-cock." A short time before the accident happened, Fairburn, the successor of Hammitt, discovering that the "drip-cock" was out of order, removed it, and closed the hole with an iron screw plug, thus restoring the valve to its original condition.

It appears that the engine was provided with a cylinder cock, through which accumulated water could pass in safety from the throttle-valve, and which, in point of fact, had served that purpose for many years.

In view of these conditions, it is not possible that the opinion of witnesses that the engine was rendered unsafe by the removal of the "drip-cock" can be sound. To the contrary, the safe and effective use of the engine for years without that appliance demonstrates the fallacy of the theory. But if it were otherwise, there is no direct evidence of the presence of either water or ice in the valve on the morning of the accident, and

the existence of one or the other condition constitutes the predicate upon which the theory is founded. It also appears from the testimony and from an inspection of the valve, which was in evidence, that if the latter had been filled with ice and cracked by freezing, it could not have been opened for the admission of steam.

2. The second alleged ground of negligence is that Fairburn, the defendant's master mechanic, was incompetent, and that by reason of his incompetency the engine and valve were rendered unsafe and dangerous.

The act of incompetency charged upon Fairburn, and supposed to have produced the accident, was his removal of the "drip-cock" from the valve. But, as remarked, the only effect of that change was to restore the valve to its normal condition, which condition, as experience had shown, was reasonably safe.

The want of merit in the remaining contention, that the defendant was negligent in employing plaintiff's intestate as an engineer, on account of his youth and inexperience, sufficiently appears from the narrative of the facts in that connection.

In this class of cases, the negligence of the master cannot be inferred from the mere occurrence of the accident. That fact alone does not raise even a *prima facie* presumption that the master has been guilty of negligence, or a breach of duty to the servant.

The principle is thus stated by the Supreme Court of the United States: "While, in the case of a passenger, the fact of an accident carries with it a presumption of negligence on the part of the carrier—a presumption which, in the absence of some explanation or proof to the contrary, is sufficient to sustain a verdict against him, . . . a different rule obtains as to an employee. The fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employee to establish, that

the employer has been guilty of negligence. *Patton* v. *Texas, &c. R. R. Co.,* 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 386.

Labatt, in his late work on Master and Servant, says: "A doctrine which has been very frequently affirmed in employer's liability cases is that the mere fact of the servant having been injured, owing to the existence of abnormally unsafe conditions, is not of itself sufficient to overcome the presumption entertained by the law, that the master has exercised proper care. The doctrine is controlling, even in cases where the nature of the accident is strongly suggestive of the conclusion that the master had fallen short of the obligatory standard of care." 2 Labatt on Master and Servant, sec. 833.

In the case of the *C. & O. Ry. Co.* v. *Heath* (decided at the present term), *ante* p. 64, 48 S. E. 508, this court observes: "The party who affirms negligence must establish it by proof sufficient to satisfy reasonable and well-balanced minds. The evidence must show more than a probability of a negligent act. An inference cannot be drawn from a presumption, but must be founded upon some fact legally established. This court has repeatedly held that when liability depends upon carelessness or fault of a person, or his agents, the right of recovery depends upon the same being shown by competent evidence, and it is incumbent upon such a plaintiff to furnish evidence to show how and why the accident occurred—some fact or facts by which it can be determined by the jury, and not be left entirely to conjecture, guess or random judgment, upon mere supposition without a single known fact. *C. & O. Ry. Co.* v. *Sparrow,* 98 Va. 630-641, 37 S. E. 302; *N. & W. R. R. Co.* v. *Cromer's Admx.,* 99 Va. 763-765, 40 S. E. 54; *Southern Ry. Co.* v. *Hall's Admr.,* 102 Va. 135, 45 S. E. 867.

"It is also well settled that when damages are claimed for injuries inflicted through the alleged negligence of the defendant, not only is the burden of showing negligence by a prepon-

derance of the evidence upon the plaintiff, but if the injury may have resulted from one of two causes, for one of which the defendant is responsible, but not for the other, the plaintiff cannot recover; neither can he recover if it is just as probable that the damage was caused by the one as by the other."

"It is not sufficient that the evidence is consistent equally with the existence or non-existence of negligence. There must be affirmative and preponderating proof of the defendant's negligence." *N. & W. Ry. Co.* v. *Poole's Admr.*, 100 Va. 148, 40 S. E. 627; *Humphreys* v. *Valley Ry. Co.*, 100 Va. 750, 42 S. E. 882; *N. & W. Ry. Co.* v. *Cromer's Admr.*, 101 Va. 667, 44 S. E. 898.

It would be unprofitable to enter into details of the testimony in this case, or to discuss the reasonable theory of expert witnesses for the defendant, that the proximate and efficient cause of the accident was the reckless conduct of plaintiff's intestate in suddenly starting the engine, which, according to the collective opinion of the witnesses, could not with safety be set in motion in less time than from two minutes to eight minutes. It is sufficient to say that the evidence wholly fails to trace actionable negligence to the defendant.

This conclusion having been reached, it is unnecessary to notice other assignments of error.

It follows from these views that the judgment of the Circuit Court of Botetourt county must be reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed.*