Statement.

## Richmond.

JOHNSTON'S ADMINISTRATOR v. MOORE LIME CO.

November 23, 1905.

1. DEMURRER TO EVIDENCE—*Case at Bar—What Jury Might Have Found —Master and Servant—Safe Instrumentalities.*—Upon the demurrer to the evidence in this case by the defendant, the jury might have found that the explosion of the engine which caused the death of plaintiff's intestate was because it had been rendered unsafe by the removal of the drip cock which had been upon it, and that in removing it the defendant had failed in its duty to exercise that reasonable care to provide reasonably safe instrumentalities which the law imposes, and that the danger to which the plaintiff was subjected *was not* so open and obvious as to charge him with contributory negligence, and, as the jury might have so found, it was the duty of the trial judge so to have decided and to have rendered judgment for the plaintiff.

Error to a judgment of the Circuit Court of Botetourt county, in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion in 103 Va. 84, in connection with the present opinion sufficiently states the case.

*Benjamin Haden* and *Wm. R. Allen,* for the plaintiff in error.

*James L. Shelton,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

This is the sequel to the case of *Moore Lime Company* v. *Johnston's Administrator*, 103 Va. 84, 48 S. E. 557. We refer to that opinion for a discussion of the evidence, as it then appeared in the record. For reasons there set forth the case was, upon the petition of the Moore Lime Company, reversed and remanded for a new trial. Upon the new trial there was a demurrer to the evidence, a verdict of the jury in favor of Johnston's administrator, and a judgment upon the demurrer in favor of the Moore Lime Company; and the proceedings culminating in the latter judgment are before us for review.

Counsel for plaintiff in error fully concedes the correctness of the former judgment of this court, and the conclusive force of the reasoning upon which it was based, but insists that the record now before us entitles his client to a recovery.

After a careful review of the evidence, we are of opinion that it presents a case which should have been submitted to the jury, both upon the question of the negligence of the defendant in error, and upon the allegation of contributory negligence on the part of plaintiff in error's intestate.

There is evidence which tends to prove that upon the morning of the accident the young man, whose death is the subject of this suit, had gotten up steam in his boiler; that there was the proper gauge of water in the boiler; that the steam had not been turned on the machinery; and that the machinery and no part of it had been put in motion; that, having gotten up the steam and while waiting for the signal to turn it on, he had "cracked the valve"—that is to say, he had opened it slightly so that the water which had accumulated in it from the preceding Saturday might gradually escape; that it was necessary to do this, and that it was done in the accustomed manner. It appears that the accumulation of water was the necessary result of the condensation of the steam which was in the pipes on the preceding Saturday, and that the cold weather then prevailing had frozen

the water which had thus formed in the throttle valve, by reason of which it cracked, became unsafe, and burst.  It appears that the engine had at one time been provided with a "drip cock" or "by pass," which had been removed, and the hole from which it was taken filled with an iron plug; that with this drip cock in position the water from the pipe would have been drained off, no ice would have formed, and the valve would not have been injured by the formation of ice.  It further appears that it would not have been safe to have "cracked the valve" and left it in that position, as there was danger of starting the machinery. There is evidence to the effect that the engine in use by the Moore Lime Company prior to December, 1901, was equipped with a drip cock; that about that date another engine was put in, to which a drip cock was also attached until about two weeks before the accident; and that during the two weeks intervening between the removal of the drip cock and the plugging of the hole the weather was not so cold as it afterwards became; and that it turned cold on the 15th or 16th of March, and was very cold Sunday evening and Sunday night.

Upon these facts, considered as upon a demurrer to evidence, we are of opinion that the verdict should not have been disturbed.  The jury was doubtless of opinion that the machinery had been rendered unsafe by the removal of the drip cock, and that in removing it the Moore Lime Company had failed in its duty to exercise that reasonable care to provide reasonably safe instrumentalities which the law imposes; and they were further of opinion that the change which rendered the throttle valve unsafe did not constitute a danger so open and obvious as to convict the employee who used it of contributory negligence, and of contributory negligence in any other aspect of the case there is no evidence whatever.

It is proper to observe that the evidence upon the last trial of this case varies in several material respects from that which was given on the first trial, which was found insufficient to maintain the verdict.  Especially is this true with respect to the drip

cock.    The proof upon the first trial was that "there was no 'drip cock' to the throttle valve originally; and no provision made for its use, and the engine had been safely operated for years without that appliance.    Indeed the 'drip cock' was first attached to the valve by Hammitt (who was employed by the defendant for one month as a machinist) in December, 1901, by drilling a hole through the globe valve and inserting the 'drip cock.'    A short time before the accident happened, Fairburn, the successor of Hammitt, discovering that the 'drip cock' was out of order, removed it, and closed the hole with an iron screw plug, thus restoring the valve to its original condition." *Moore Lime Co.* v. *Johnston, supra.*    The evidence now before us tends to show that prior to December, 1901, the engine then in use had a drip cock, and had never been operated without it; that the engine which was brought to the mill in December, 1901, was a second hand engine from Richmond; that it came "tapped" for a drip cock, and that in the fixtures that came with the engine there was a drip cock for the purpose of being placed there; that this latter engine, thus equipped, with a drip cock to the throttle valve, was so used until about a fortnight before the accident, at which time it was taken out and the hole filled with an iron plug. There was evidence upon the former trial which strongly tended to show, "that the proximate and efficient cause of the accident was the reckless conduct of plaintiff's intestate in suddenly starting the engine, which, according to the collective opinion of the witness, could not with safety be set in motion in less time than from two minutes to eight minutes;" (*Moore Lime Co.* v. *Johnston, supra.*) while upon this point the proof now before us is that the steam had not been turned on, but the valve had merely been "cracked."

We are of opinion that the judgment should be reversed, and this court will enter judgment upon the verdict for plaintiff in error.

*Reversed.*