### The Sargent Company v. Naaman Shukair.

### Gen. No. 13,602.

1. FELLOW-SERVANTS—*how question of existence of relation of, determined.* Whether the plaintiff at the time of his injury was so co-operating or consociating with other servants of the defendant, his master, is a question of fact and not of law.

2. FELLOW-SERVANTS—*when relation of, does not exist. Held,* under the evidence of this case, that the jury were warranted in finding that the plaintiff while engaged in preparing cores, moulds, etc., was not a fellow-servant of other employes of the defendant.

The Sargent Co. v. Shukair.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1907. Affirmed. Opinion filed January 14, 1908.

**Statement by the Court.** This appeal is from a judgment in favor of the plaintiff Shukair for $1,800 against the defendant, The Sargent Company, rendered by the Circuit Court January 26, 1907.

The plaintiff was a servant of the defendant, working in its foundry in the city of Chicago. While so employed he received an injury which resulted in the loss of the sight of one eye.

It was plaintiff's work to follow immediately behind the gang of men who were filling moulds with molten iron, in the process of making certain castings, and look into the mould to see whether enough molten iron had been poured into it, and if so, to throw a small shovelful of sand on it. If enough molten iron had not been poured into the moulds, it was plaintiff's duty to call the attention of the foreman to the fact that the mould was not full enough, and thereupon the men would return to the mould and pour more of the molten iron into it. The plaintiff was injured while he was about to look into the mould for the purpose indicated. Before he had ascertained whether the mould was full enough, the molten iron "popped" or exploded and some of the hot metal was thrown up through the hole where it had been poured into the mould and struck plaintiff in the eye, destroying the sight.

F. J. CANTY and J. C. M. CLOW, for appellant.

WILLIAM R. Moss, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

No question is presented in argument arising upon the pleadings, or instructions, or rulings upon evi-

dence. Appellant's sole contention is that the trial court should have instructed a verdict for the defendant, because the evidence shows that if appellee's injury was the result of any negligent act, such act was the negligence of one of appellee's fellow-workmen, and appellant is not liable.

Whether appellee was so co-operating or consociating with appellant's other servants as to exempt appellant from liability for injury received, was a question of fact for the jury, and not of law for the court. C. & N. W. Ry. Co. v. Moranda, Admx., 108 Ill. 576, 581.

In the case just cited it was held: "In order to constitute servants of the same master, fellow-servants, within the rule *respondeat superior,* it is not enough they are engaged in doing parts of some work, or in the promotion of some enterprise carried on by the master, not requiring co-operation nor bringing the servants together or into such personal relations that they can exercise an influence upon each other promotive of proper caution in respect of their mutual safety, but it is essential that they shall be, at the time of the injury, directly co-operating with each other in the particular business in hand, or that their usual duties shall bring them into habitual consociation, so that they may exercise an influence upon each other promotive of proper caution."

The testimony shows that the foundry floor where the accident happened is a large floor with its greatest dimension extending north and south. The furnace where the iron is melted is at the north end. Flasks made of iron and consisting of two parts or halves were used. Each half was filled with sand, which is tamped hard around the forms of the castings to be made, so that when the top flask is put over the bottom half a hole or space is left which is the exact form and size of the casting to be made.

All or nearly all of the castings made during the period of appellee's employment by appellant were of

the same kind and character. They had a hole through them about an inch and a half in diameter, and as long as the casting was thick. In order to make this hole they used what was called a core. This core was made of a mixture of sand and other materials. Before the top half of the flask was set over the bottom half this core was set in the bottom half, so that it would bring the hole in the proper place in the casting. The top half of the flask was then put on, thus entirely closing this core in the flask or mould. A hole about an inch and a half or two inches in diameter was left in the top half of the flask, through which the molten iron was poured to make the casting. Immediately over this hole was placed a runner cup which served merely as a funnel. This runner cup was made of a mixture of sand and other materials and was about five inches in diameter, and about six inches long. A funnel-shaped hole ran through it, and as the cup sat on the mould the wide end or mouth of the funnel was up and the small end down, and connecting with the hole in the top part of the flask.

In order to provide for the free escape of certain gases generated by the heating of the core when the molten iron was poured in, a hole was made nearly through it lengthwise, about the size of an ordinary rye straw. After the core had been placed in a mould and the top part of the flask put in place, a hole of the same size was punched through the sand of the top part of the flask to connect with the hole in the core. This formed a vent for the mould, and enabled any gases generated in the mould to escape freely. When the moulds or flasks were thus prepared, they were picked up by a traveling crane and placed in three rows of about seventy flasks in each row.

Appellee had nothing to do with any of the above work, except to make the runner cup, which he did in a room by himself while the above described work was being done by the moulders in the large foundry room. Evans, a boy, made the cores while appellee

worked in the foundry. Other servants made the top and bottom parts of the flasks; another workman placed the cores in the bottom half of the flasks; others placed the top halves of the flasks on the bottoms; other workmen, by means of the traveling crane, picked up the flasks and placed them in position; another workman placed the runner cups on the tops of the moulds.

The testimony shows that the runner cup is not a part of the mould; that the cores are a part of the mould; that when a flask was set in position ready to be filled it was impossible to tell whether it was properly made in all respects or not, and the core could not be seen. When everything was made ready for "pouring the heat," appellee was notified and then joined the pouring gang. His duties with the gang are described in the statement preceding this opinion. The pouring was done twice in the day, once in the fore-noon and once in the afternoon. This required about an hour on each occasion.

It appears from the evidence that while the pouring was being done, the flasks would explode, or "pop," as it is called by the witnesses. By this is meant that, as the result of various causes, the molten iron in the flask would be forced out of the flask suddenly, through the hole in the top or through the running cup, and particles of it would be thrown into the air two or three feet. These poppings are divided by the witnesses into two classes or kinds. One class of poppings is caused by the presence in the sand of the mould of some foreign substance, such as a piece of iron or nail or wood. If the molten iron comes in contact with any such foreign particle, the molten iron is made to "pop." When the popping is caused in this way, it occurs immediately when the mould is filled and before the ladle can be moved on to the next flask. The other class of poppings is caused by some defect in the vent already spoken of; and when a flask is caused to pop by a defective vent, or by some obstruction in the vent, it will not occur immediately on

the filling of the flask, as in the case of the other class of poppings, but it will occur after the lapse of a few seconds and during the time in which the ladle was passed on to the first or second flask beyond.

When appellee was injured, the men were filling the third flask ahead of him, and the flask into which he was looking, as it was his duty to do, to see whether it was filled properly, popped, throwing the hot iron into his eye. The inference is obvious, therefore, that it was caused by defective venting of the flask. The testimony of the witnesses familiar with such matters tends to show that the popping in this instance was caused by a defective or obstructed vent, and to eliminate every other cause.

It appears from the evidence that a defective vent might be made in several different ways. If the person who makes the core fails to put a hole in it, or if he fails to make the hole deep enough, it would cause such a popping as occurred on this occasion. If the person who places the core in the bottom half of the flask before the top half is placed upon it should put the wrong end of the core up, it would cause the mould to pop. If the person who makes the vent hole through the top half of the flask after it has been placed on the bottom half fails to make the hole connect with the hole in the core, or fails to make any hole, it will cause the flask to pop. If while the flask is being moved by the crane to its position in the row of flasks it is bumped or jarred so as to disturb the connection of the hole in the top part of the flask with the hole in the core, this will make an obstruction in the vent which will cause the flask to pop. Or, if in moving the flask it should be jarred so that particles of sand should fall and partly fill up the vent hole, it would cause the flask to pop.

The evidence shows that in this foundry the cores were made in a room apart from the room in which appellee made runner cups, and apart from the room where the moulders were at work.

In our opinion, the jury were warranted in finding
from the evidence that appellee was not consociated
with any of the workmen while engaged in preparing
the cores and moulds and placing them in position
ready for "pouring the heats," in any such manner
that he could exercise an influence upon them or they
upon him in their work, promotive of proper caution
in respect to their mutual safety; and that they were
brought together only in the act of pouring, and that
therefore they were not fellow-servants. Upon a care-
ful review of the evidence, we think it supports the
finding of the jury. Appellee, in the discharge of his
duties and the performance of his work, had no oppor-
tunity for such association with the core makers,
moulders and handlers of the flasks as would bring
him within the fellow-servant rule. The evidence
shows that when a mould is properly made and re-
mains in good condition the molten metal when poured
into it will lie in the mould as quietly as water when
poured into a bucket. The inference from the evi-
dence is not only reasonable, but clear, that the ex-
plosion or popping in question was occasioned by a
defect in the core or vent, and that such defect was
occasioned by the negligent act of one or more of ap-
pellant's servants in preparing or handling the mould
prior to the time the pouring began, for which appel-
lant must be held liable.

Appellant requested, and the court gave, instruc-
tions, numbered in the abstract one, four, six, eight,
twelve and fourteen, on the question of the assumption
of risk on the part of appellee. We find no evidence
in the record tending to show that appellee was noti-
fied of the defect in the mould in question, or that
such defect was patent, or that he knew of the danger.
On the question of assumption of risk we think the
verdict is right, on the evidence, and must be sus-
tained.

The evidence points to the fact that appellant,
through its servants, was negligent. It shows that any

one of several causes might have brought about the injury, but does not show clearly which cause produced it. The appellant, however, in our opinion, is responsible for all the defects in the vent above enumerated. We cannot perceive, therefore, the application of the doctrine announced in Moore Lime Co. v. Johnson (Va.), 48 S. E. Rep. 557; Taylor v. City of Yonkers (N. Y.), 11 N. E. Rep. 642; and Patton v. Tex. & Pac. Ry. Co., 21 Sup. Ct. Rep. 275, cited by appellant, to the case at bar, for the reason that those cases hold that when the testimony leaves the cause of the injury uncertain, and shows that any one of a number of causes may have caused the injury, for some of which the employer is responsible, and for some of which he is not, it is not for the jury to guess between the real causes when there is no satisfactory foundation in the evidence on which to base a conclusion.

The record is apparently free from error and the judgment is therefore affirmed.

*Affirmed.*