Statement.

## Staunton.

### Stonega Coke and Coal Co. v. Neece.

September 15, 1910.

Absent, Cardwell, J.

1. Negligence—*Burden of Proof.*—Where damages are claimed for injuries inflicted through the alleged negligence of the defendant, the burden of showing negligence by a preponderance of the evidence is on the plaintiff, and if the injury may have resulted from one of two causes, for one of which the defendant is responsible but not for the other, the plaintiff cannot recover; neither can he recover if it is just as probable that the damage was caused by the one as by the other.

2. Demurrer to Evidence—*Insufficient Evidence—Case at Bar.*—On a demurrer to the evidence by the defendant, in an action to recover damages for a negligent injury inflicted on the plaintiff, there can be no recovery where the evidence on behalf of the plaintiff does not sustain the allegation of negligence upon which his claim to damages is predicated. The evidence in the case at bar does not show negligence on the part of the defendant.

Error to a judgment of the Circuit Court of Wise county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Bullitt & Chalkley,* for the plaintiff in error.

*Vicars & Peery* and *Morton & Parker,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This action was brought to recover damages for injuries suffered by the defendant in error while employed as a car-pusher at the plaintiff in error's coal mine.

The. defendant company demurred to the plaintiff's evidence, but the court overruled the demurrer and rendered the judgment under review, in favor of the plaintiff, for $5,000, the damages conditionally assessed by the jury.

The negligence charged was the failure of the defendant to use ordinary care to provide the plaintiff with reasonably safe mine cars and couplings with which to discharge the duties of his employment; that while the plaintiff was pushing a detached car along the track to the tipple to be dumped, other loaded cars, which were controlled by an electric motor, by reason of defective couplings, parted from the train and ran down upon the plaintiff from the rear by force of gravity, catching him between the detached cars and the car he was pushing, and inflicting the injuries of which he complains.

The track from the inside of the mine to within a short distance. of the mouth is slightly up-grade, from which point to the mouth of the mine it is level, and thence there is a light down-grade for the distance of about 240 feet to the dump on the tipple. Loaded cars are gathered on the main track in the mine, and pushed out in the direction of the tipple by an electric motor, near which they are successively released from the trip by the car-pushers, shoved down to the mouth of the tipple and dumped. The empties are then switched on to another track and carried back into the mine to be reloaded, and the process of unloading is repeated. The cars were connected by three-link couplings attached to draw-heads by a clevis and pin.

On the occasion of the accident after the plaintiff had dumped from five to eight cars and had gone back for an-

other car, he found the coupling so taut that it would not uncouple. Thereupon, he got upon the bumper of the forward car and by pressing the links down with his foot produced sufficient slack to enable him to withdraw the clevis-pin and uncouple the car. His account of the accident is as follows: "I had run five or six cars, and went back after another one, and I uncoupled it and started to push it and it stopped on me, was so hard I couldn't push it and I pushed it a little ways apart, and went to step down between the cars on the ground and just as I let my foot down it caught me—just in a dash —done so quick I couldn't tell how it was done. I didn't get my foot down to the ground, and they struck it with something. I suppose the motor struck it and caught me."

Continuing, the witness testifies that the detached car was driven forward a distance of three feet from the other cars by the force of the impact, and before he could extricate himself (having sustained a fracture of the small bone of his right leg and other injuries from the first collision) the cars came together again, catching him about the calf of the injured leg and holding him fast until some of his fellow-servants set the brakes on the rear cars and released him.

The statement of the brakeman, Everidge, which is chiefly relied on to sustain the plaintiff's theory, is as follows: "I was brakeman and saw John Neece when he got hurt. John Neece had uncoupled one car and was shoving it down to dump it. The cars behind Neece, supposed to be coupled to the train of cars, ran against Neece and caught him between the bumpers of the car he was shoving and the bumpers of the car behind him. I signalled the motorman to stop, which he did, but some of the cars, all but five or six, had broken loose from the motor and these were the cars which caught Neece. In going to where Neece was, I walked between the cars which had broken loose from the motor and the cars which were still attached to the motor. As I did so, I noticed that the clevis of the coupling was sprung so much that the pin wouldn't

hold and pulled out. I caught the brakes and stopped the cars as soon as I could."

Now it will be observed that Everidge does not undertake to say that the cars broke away from the five or six cars which remained attached to the motor before the accident. On the contrary, he says they were "supposed to be coupled to the train," and at the moment of the accident the entire train was moving in the direction of the tipple. It will also be remembered that the plaintiff himself attributed the collision to the force exerted by the motor in pushing the train. He expressed that opinion in his evidence in chief, and adhered to it throughout his testimony. The evidence of the motorman, Sopshur, the remaining witness for the plaintiff who speaks to the point, is strongly corroborative of Neece's opinion. He was on his motor some thirty-five or forty feet inside the drift mouth with a trip of about thirty cars. These cars had been pushed slowly some twelve or fifteen feet in the direction of the tipple when Everidge signalled him with a lantern to stop which he did as quckly as possibly. He thereupon walked toward the drift-mouth to see who was hurt, and in passing the trip discovered that some fifteen cars had pulled apart a distance of from eight to twelve feet. When stopped the rear end of these cars was still inside the drift mouth. He could not say whether the cars broke loose before or after he got the signal to stop, but he is satisfied they did not run apart until after he had stopped the motor. He could tell by the feel of them that they were up against the motor, "which was pushing them along the track. It is not pretended that Sopshur was guilty of any negligence in handling these cars. He was a motorman of long experience and was pushing the cars out in the customary way. Moreover, the plaintiff was well apprised of the prevailing method of handling trains in connection with loading and unloading cars, and it was his duty and that of his working mate to set a sufficient number of brakes to prevent collisions.

Sopshur's testimony shows that the fugitive cars did not part from the rest of the train until after the motor was stopped, and consequently the collision resulted from the force exerted by the motor in pushing the cars, and not from force of gravity. If this be true, it is not possible that the defective clevis could have been the proximate cause of the accident, and that is the sole issue presented by the pleadings.

The rule is firmly established by the decisions of this court, that, "Where damages are claimed for injuries inflicted through the alleged negligence of the defendant, the burden of showing negligence by a preponderance of the evidence is on the plaintiff, and if the injury may have resulted from one of two causes, for one of which the defendant is responsible but not for the other, the plaintiff cannot recover; neither can he recover if it is just as probable that the damage was caused by the one as by the other." *N. & W. Ry. Co.* v. *Poole,* 100 Va. 148, 40 S. E. 627; *Northington* v. *Norfolk Ry., &c., Co.,* 102 Va. 446, 44 S. E. 475; *C. & O. Ry. Co.* v. *Heath,* 103 Va. 64, 48 S. E. 508; *Moore Lime Co.* v. *Johnston,* 103 Va. 84, 48 S. E. 557.

The evidence on behalf of the plaintiff, which we have alone considered, does not sustain the allegation of negligence upon which his claim to damages is predicated, and in such case there can, of course, be no recovery.

For these reasons we are of opinion that the circuit court erred in overruling the defendant's demurrer to the plaintiff's evidence, for which error the judgment must be reversed and the demurrer to the evidence sustained.

*Reversed.*