# Richmond

WELL'S ADMINISTRATOR v. SUTHERLAND COAL AND COKE Co.

November 12, 1914.

1. MASTER AND SERVANT—*Sudden Death of Servant—Negligence to be Proved.*—The case at bar is one of sudden death from unexplained causes. The evidence does not disclose negligence on the part of the master, and it cannot be inferred in the absence of proof of facts from which the inference could be fairly drawn. Actionable negligence cannot be left entirely to conjecture, but some fact or facts must be shown by the party alleging negligence and who has the burden of proof on that question, by which the existence of negligence can be determined by the jury.

·Error to a judgment of the Circuit Court of Wise county in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*E. M. Fulton* and *E. N. Kilgore,* for the plaintiff in error.

*Bullitt & Chalkley* and *Cabell, Garnett & Cabell,* for the defendant in error.

. KEITH, P., delivered the opinion of the court.

The administrator of Loranza Wells brought suit in the Circuit Court of Wise county to recover damages of the Sutherland Coal and Coke Company for the death of his intestate, caused, as is alleged, by the negligence of the defendant. Upon the trial, the defendant de-

murred to the plaintiff's evidence, the jury rendered a verdict in favor of the plaintiff for $5,000, and the circuit court, sustaining the demurrer, entered judgment for the defendant.

The evidence proves or tends to prove that Wells, a married man twenty-three years of age, apparently in good health, and an industrious worker, had been employed in the Clark mine operated by the defendant company doing work of various kinds, but had only worked as a coal digger in the room where he lost his life for a few days. Intestate was at work in room 38 in the Clark mine. There appears to have been three parallel rooms—37, 38 and 39. Room 37 had been driven further than 38, and two "break-throughs" had been cut between 37 and 38, but these "break-throughs" had been filled up with slate and other debris, so that very little air, if any, could come through from 37 to 38. Room 38 was driven into the coal mine about 225 to 300 feet, not so far as its parallel room on one side, 37, but about 100 feet further than room 39 on the opposite side. The evidence tends to show that the defendant would not allow the slate and rock that filled up the "break-throughs" between 37 and 38 to be removed, but the evidence further shows that this was not bad mining and does not constitute an act of negligence. There is evidence tending to show that the fan which was intended to establish a circulation of air in the mine was not run regularly, though the proof is that it was in operation on the morning of the accident.

Wells and his companion, Roberts, had been at work in room 38 on the evening of the 11th of November, the day before the death of plaintiff's intestate. About seven o'clock on that day the defendant in error wanting to get some clean sample coal sent men into room 38 for this purpose, who worked there from 7 p. m. un-

til 2 a. m., and as they left three others took their places; but it does not appear how long they remained at work in this room. On the morning of his death, the deceased went to work about six or half past six o'clock. He was not informed by defendant in error of the previous night's work in room 38, by which it is contended on behalf of plaintiff in error that the room was rendered more dangerous, but (to quote from the petition.) "was allowed to work unapprized of the additional deadly vapors that infected the room and added to the already foul gases that he was compelled to inhale while performing his work." A short time after Wells went to work, he and his companion, Roberts, fired off a small blast of dynamite and passed through the "break-through" from room 38 to room 39, and upon entering room 39, instead of turning toward the opening of the mine, they went in the opposite direction and sat down. They were talking about matters of indifference, when Wells said that he was feeling badly and at once toppled over on his comrade and died. Roberts testified that to the best of his knowledge and belief they had been in room 39 from ten to twenty minutes waiting for the smoke resulting from the dynamite blast to subside or disappear in room 38 when Wells fell over and died.

There is evidence that the air was bad in room 38, in the sense that the smoke from the lamps used by miners during the night of November 11, while mining for sample coal, rendered the air offensive. It appears also that those engaged in mining the sample coal shot off a dynamite blast, in which half a stick of dynamite was used, which tended to render the air offensive, but there is no evidence whatever of the presence of carbonic acid, commonly known as "choke damp" and so called from its extinguishing of flame and animal life, nor of

"fire damp," which consists of light carbureted hydrogen and so called from its tendency to explode when mixed with atmospheric air and brought into contact with flame. There was no explosion, nor is there any evidence of the existence of carbonic acid, and it cannot be doubted that had it been present its presence would have been proved. It is shown that the smoke produced by the explosion of dynamite is offensive; that even when the visible smoke has been removed an offensive odor is left. All men know that the smoke produced by the imperfect combustion in a lamp is offensive to the senses, producing headache and other disagreeable sensations, but it is not fatal to human life. It is a matter of common knowledge that chimneys are of comparatively recent introduction, and that before their introduction smoke escaped as best it could through a hole in the roof or apertures in the building.

The case before us, therefore, is one of sudden death from unexplained causes. There was no autopsy, which might have thrown light upon the situation, but the plaintiff in error contented himself with a general statement from inexpert witnesses that his intestate was a man in good health.

The principles of law underlying and controlling this case have been frequently considered by this court.

In *Moore Lime Co.* v. *Johnson,* 103 Va. 84, 48 S. E. 557, it was said: "In this class of cases the negligence of the master cannot be inferred from the mere occurrence of the accident. That fact alone does not raise even a *prima facie* presumption that the master has been guilty of negligence or a breach of duty to the servant."

In *C. and O. Ry. Co.* v. *Heath,* 103 Va. 64, 48 S. E. 508, the court said: "The party who affirms negligence must establish it by proof sufficient to satisfy reason-

able and well balanced minds. The evidence must show more than a probability of a negligent act. An inference cannot be drawn from a presumption, but must be founded upon some fact legally established. This court has repeatedly held that when liability depends upon carelessness or fault of a person, or his agents, the rights of recovery depend upon the same being shown by competent evidence; and it is incumbent upon such a plaintiff to furnish evidence to show how and why the accident occurred, some fact or facts by which it can be determined by the jury, and not be left entirely to conjecture, guess or random judgment upon mere supposition without a single known fact.''

In *Persinger* v. *Alleghany Ore & Iron Co.,* 102 Va. 354, 46 S. E. 326, the court said: ''The fact that the accident was avoidable does not prove that there was fault in not anticipating and providing against it. . . . If the fact that prevention was possible is to render the employer liable, then he may as well be made an insurer of the safety of those in his service in express terms, for, to all intents and purposes, he would in law be an insurer, whether nominally so or not.''

In *Patton* v. *Texas, &c. R. Co.,* 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361, the court said: ''The fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employe to establish that the employer has been guilty of negligence; and in the latter case it is not sufficient for the employee to show that the employer may have been guilty of negligence—the evidence must point to the fact that he was. And where the testimony leaves the matter uncertain and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not

for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion. If the employee is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his testimony, and no mere sympathy for the unfortunate victim of an accident justifies any departure from settled rules of proof resting upon all plaintiffs."

The presence of smoke as the result of imperfect combustion is unavoidable and occurs in all mines, and as we have already said is often the cause of inconvenience and discomfort, and doubtless might become so dense as to cause death by asphyxiation; but the evidence in this record does not prove or tend to prove any such situation, and is wholly silent as to the presence of carbonic acid or carbureted hydrogen.

We are of opinion that the second ground of demurrer is well taken, and that "the evidence does not show what was the cause of the death of said Wells." The judgment of the circuit court must, therefore, be affirmed.

*Affirmed.*